```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA,
                                    :
        - v. -
                                    :    08 Cr. 585 (GEL)
ANTHONY MORANTE,
    a/k/a "Anthony Morento,"         :

                Defendant.           :

- - - - - - - - - - - - - - - - - - x
```

GOVERNMENT'S MEMORANDUM OF LAW IN RESPONSE TO
DEFENDANT'S MOTION TO SUPPRESS PHYSICAL EVIDENCE
AND ORAL STATEMENTS

 

MICHAEL J. GARCIA
United States Attorney for the
Southern District of New York
Attorney for the United States
of America

CHRISTIAN R. EVERDELL
Assistant United States Attorney

    - Of Counsel -



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

August 29, 2008

**BY HAND DELIVERY**

The Honorable Gerard E. Lynch
United States District Judge
United States District Court
500 Pearl Street, Room 910
New York, New York 10007

      Re:    **United States v. Anthony Morante,**
              08 Cr. 585 (GEL)

Dear Judge Lynch:

      In advance of the evidentiary hearing scheduled for September 4, 2008 at 9:30 a.m., the Government respectfully submits this letter in response to defendant Anthony Morante's motion to suppress physical evidence and oral statements obtained in connection with his March 19, 2008 arrest for being a felon in possession of a firearm.

      For the reasons set forth below, the declaration submitted by Morante is insufficient to establish his standing to contest the seizure of the gun and the knife that were recovered at the time of his arrest. Accordingly, an evidentiary hearing is not warranted to resolve whether this evidence should be suppressed. However, because Morante also seeks to suppress his post-arrest statements to the police on the grounds that they were obtained as the result of an illegal seizure, the Government consents to a hearing to resolve the sole question of whether the police had reasonable suspicion that criminal activity was afoot when they stopped the livery cab in which Morante was riding. The Government respectfully submits that the evidence at the hearing will show that the police had reasonable suspicion that criminal activity was afoot based on their observations of Morante and another individual on the corner of East 187th Street and Cambreleng Avenue, which, in turn, led them to stop the livery cab that arrived at the corner and picked up Morante shortly thereafter. Accordingly, Morante's post-arrest statements are not the fruit of an unlawful seizure and should not be suppressed.

### BACKGROUND

      Morante is charged in a one-count Indictment with being a felon in possession of a firearm, in violation of Title 18, United States Code, Section 922(g)(1). At a hearing, the Government respectfully submits that the evidence will show the following:

The Honorable Gerard E. Lynch
August 29, 2008
Page 2 of 6

On or about March 19, 2008, at approximately 6:15 p.m., two police officers from the New York City Police Department ("NYPD") were on routine patrol in a marked police car in the Bronx. They were patrolling in an area in which both officers had made narcotics arrests in the past. As they drove towards the intersection of East 187th Street and Cambreleng Avenue, the officers observed a group of people in front of a small grocery store on the corner. The officers parked their car across the street and observed Morante standing on the corner talking to another individual. Morante's actions at that time, and those of the other individual, aroused the officers' reasonable suspicion that they were engaged in criminal activity. The officers then observed a livery cab pull up to the corner and saw Morante get inside. The officers followed the livery cab for approximately two blocks and then pulled it over. Morante spoke to one of the officers and, in response to questions, disclosed to the officer that he was carrying a knife and showed the officer that the knife was attached to his waist area. The officer identified the knife as a gravity knife, which are illegal to possess in New York. The officer then placed his hands on Morante, and in doing so, the officer felt what he believed to be a gun in Morante's jacket pocket. After Morante was arrested, the officer recovered a .25 caliber firearm from Morante's inside jacket pocket. Morante made statements to the police following his arrest.

## DISCUSSION

A. <u>Morante Has No Standing To Contest The Seizure Of The Gun And The Knife</u>

A defendant seeking to suppress evidence must demonstrate by a preponderance of the evidence that he had a reasonable expectation of privacy in the location or items searched. <u>Rakas</u> v. <u>Illinois</u>, 439 U.S. 128, 143 (1978); <u>United States</u> v. <u>Perea</u>, 986 F.2d 633, 639 (2d Cir. 1993); <u>United States</u> v. <u>Osorio</u>, 949 F.2d 38, 40 (2d Cir. 1991). This expectation of privacy must be both subjectively and objectively reasonable – that is, the defendant must have a subjective expectation of privacy and that expectation must be one that is deemed objectively reasonable by society at large. <u>United States</u> v. <u>Fields</u>, 113 F.3d 313, 320 (2d Cir. 1997). Courts generally evaluate standing by considering "whether the defendant had any property or possessory interest in the place searched or the items seized." <u>United States</u> v. <u>Osorio</u>. 949 F.2d at 40 (citations omitted). The burden of establishing standing falls squarely upon the defendant. <u>Rawlings</u> v. <u>Kentucky</u>, 448 U.S. 98, 104 (1980). This burden "is met only by sworn evidence, in the form of an affidavit or testimony, from the defendant or someone with personal knowledge. A defendant's unsworn assertion of the Government's representations does not meet this burden." <u>United States</u> v. <u>Montoya-Eschevarria</u>, 892 F. Supp. 104, 106 (S.D.N.Y. 1995) (citations omitted).

In his affidavit, Morante asserts only that he "was not engaged in any suspicious behavior" in the vicinity of East 187th Street and Cambreleng Avenue, and that he "was not involved in the exchange of anything for money." Morante Decl. ¶ 3. Morante does not concede that the gun and the knife that were recovered were his, or that they were recovered from

The Honorable Gerard E. Lynch
August 29, 2008
Page 3 of 6

anywhere on his person. Indeed, Morante makes no mention whatsoever of the gun and the knife in his declaration. The only reference to the gun and the knife in the defendant's moving papers appear in defense counsel's affirmation, which cites to the criminal complaint. Cross Aff. ¶ 3 (citing Criminal Complaint ¶ 3(c)-(e) ("After questioning Mr. Morante, the second officer recovered a knife and a gun from Mr. Morante"). Such unsworn assertions are not enough to establish standing. See United States v. Montoya-Eschevarria, 892 F. Supp. at 106.

Because Morante has not presented any sworn evidence in his declaration that would establish his possessory interest in the area searched or the items seized, he has not established standing to contest the legality of their seizure. See United States v. Zorilla, No. 91 Cr. 733 (CSH), 1991 WL 274486, at *2 (S.D.N.Y. Dec. 12, 1991) (defendant who did not claim any proprietary or possessory interest in the gun that was recovered, or in the area searched, was not entitled to a suppression hearing); Martin v. McClellan, No. 97 Civ. 7485, 2000 WL 640662, at *3 (S.D.N.Y. May 17, 2000) ("because [Petitioner] disclaimed any possessory interest in the contraband, and indeed asserted that no drugs were seized from him, [Petitioner] had no standing to contest the seizure"). Accordingly, an evidentiary hearing is not warranted to determine whether the gun and the knife were improperly seized.

      B.    <u>Applicable Legal Principles For The Evidentiary Hearing</u>

With respect to Morante's post-arrest statements, the applicable law concerns the ability of the police officers to stop the defendant based on reasonable suspicion.[1]

      1.    <u>Initial Stop</u>

It is well-settled that "[u]nder Terry v. Ohio, 392 U.S. 1 (1968), police may briefly detain an individual for questioning if they have a reasonable suspicion that criminal activity is afoot." United States v. Elmore, 482 F.3d 172, 178 (2d Cir. 2007); see also United States v. Tehrani, 49 F.3d 54, 58 (2d Cir. 1995); United States v. Glover, 957 F.2d 1004, 1008 (2d Cir. 1992). To justify a Terry stop, "[p]olice 'must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion [on a citizen's liberty interest].'" United States v. Elmore, 482 F.3d at 178-79 (alterations in original) (quoting Terry v. Ohio, 392 U.S. at 21).

"Reasonable suspicion" is measured by an objective test; "the 'actual motivations of the individual officers involved' in the stop 'play no role' in the analysis." Holeman v. City of New London, 425 F.3d 184, 190 (2d Cir. 2005) (quoting Whren v. United States, 517 U.S. 806,

---

[1] In the event that the Court decides that Morante has standing to contest the seizure of the gun and the knife, this section also sets forth the applicable law governing the ability of the police to conduct a search of his person.

The Honorable Gerard E. Lynch
August 29, 2008
Page 4 of 6

813 (1996)). When assessing whether an officer's suspicion "that criminal activity is afoot" was objectively reasonable, a court must consider the "totality of the circumstances" facing the officer at the time of the stop. Elmore, 482 F.3d at 179; United States v. Cortez, 449 U.S. 411, 417 (1981); United States v. Bayless, 201 F.3d 116, 133 (2d Cir. 2000). In that analysis, factors that by themselves suggest innocent conduct may add up to reasonable suspicion when viewed as a whole. See United States v. Arvizu, 534 U.S. 266, 274-75 (2002); see also United States v. Villegas, 928 F.2d 512, 516 (2d Cir. 1991) ("Conduct as consistent with innocence as with guilt may form the basis for an investigative stop where there is some indication of possible illicit activity."). For example, "apparently benign behavior that nonetheless leads an officer to believe he is witnessing drug-related activity can provide justification for a Terry stop." United States v. Padilla, No. 06-CR-824 (NGG), 2007 WL 1958894, at *6 (E.D.N.Y. June 29, 2007) (citing United States v. Bayless, 201 F.3d at 133).

  Moreover, reasonable suspicion is measured from the objective perspective of a trained and experienced law enforcement officer. That is because the reasonable suspicion analysis "does not deal with hard certainties, but with probabilities," and properly takes into account that trained law enforcement agents may make observations and draw conclusions that go beyond the capacity of a lay person. United States v. Cortez, 449 U.S. at 418; see also United States v. Villegas, 928 F.2d at 516 (suspicion reasonable if conduct appears suspect to trained observer). In the case of a suspected drug transaction, "the reasonable suspicion inquiry must ask if 'the conduct would appear suspect to one familiar with the practices of narcotics couriers, albeit the pattern of behavior is innocuous to the untrained observer.'" Bayless, 201 F.3d at 133 (citation omitted).

  The threshold for reasonable suspicion "falls considerably short of satisfying a preponderance of the evidence standard." United States v. Arvizu, 534 U.S. at 274; Elmore, 482 F.3d at 179 (same). Specifically, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause [and] can arise from information that is less reliable than that required to show probable cause." Alabama v. White, 496 U.S. 325, 330 (1990). It may be based on any of a variety of factors, including an individual's presence in a high-crime neighborhood and "nervous, evasive behavior." Illinois v. Wardlow, 528 U.S. 119, 124 (2000); United States v. Welbeck, 145 F.3d 493, 498 (2d Cir. 1998) (stop justified by, *inter alia*, defendant's "evident alarm and evasive behavior" after being alerted to police presence). Reasonable suspicion may also be aroused by activity consistent with drug trafficking. See, e.g., Hernandez v. City of Rochester, 260 F. Supp. 2d 599, 608-609 (W.D.N.Y. 2003) (finding reasonable suspicion where, among other things, the events occurred in a location known for street-level drug sales; the defendant appeared to be "hanging out" in front of a grocery store at that location; and the defendant was observed making "some sort of exchange" with people that approached him).

  Reasonable suspicion will justify the temporary detention of an individual during

The Honorable Gerard E. Lynch
August 29, 2008
Page 5 of 6

a traffic stop, provided that the officer making such a stop has "reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity." Holeman v. City of New London, 425 F.3d at 189; see also Bayless, 201 F.3d at 133-34 (traffic stop justified by reasonable suspicion of drug activity); United States v. Perea, 986 F.2d 633, 644 (2d Cir. 1993) (same); United States v. Ocampo, 650 F.2d 421, 428 (2d Cir. 1981) (same); United States v. Coulombe, No. 1:06-CR-343 (GLS), 2007 WL 4192005, at *5 (N.D.N.Y. Nov. 26, 2007) (same). Furthermore, an officer conducting a Terry stop is permitted to detain the individual briefly "in order to investigate the circumstances that provoke[d] suspicion." Berkemer v. McCarty, 468 U.S. 420, 439 (1984) (quoting United States v. Brignoni-Ponce, 422 U.S. 873, 881 (1975)). During the stop, the officer "may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions" without transforming the stop into an arrest. Id.; see also United States v. Ocampo, 650 F.2d 421, 428 (2d Cir. 1981) (stop of car was investigative detention, not unlawful arrest, where agents did not place defendant under arrest until after asking him his name and confirming their suspicions regarding his involvement in cocaine transaction).

       2.    Protective Search

After stopping a suspect, an officer is permitted to conduct a patdown or protective search for weapons if he has "reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." Terry, 392 U.S. at 27; Ybarra v. Illinois, 444 U.S. 85, 93 (1979) ("a law enforcement officer, for his own protection and safety, may conduct a patdown to find weapons"); United States v. Muhammad, 463 F.3d 115, 124 (2d Cir. 2006) ("A patdown is reasonable to 'allow the officer to pursue his investigation without fear of violence.'") (quoting Adams v. Williams, 407 U.S. 143, 146 (1972)). The officer need not be certain that the suspect is armed; rather, an officer may conduct a protective search if a reasonably prudent person in the officer's position "would be warranted in the belief that his safety or that of others was in danger." Terry, 392 U.S. at 27; United States v. Alexander, 907 F.2d 269, 272 (2d Cir. 1990) ("A law enforcement agent, faced with the possibility of danger, has a right to take reasonable steps to protect himself and an obligation to ensure the safety of innocent bystanders, regardless of whether probable cause to arrest exists."); see also United States v. McCargo, 464 F.3d 192, 200 (2d Cir. 2006) ("[T]he strictures of the Fourth Amendment must not be so burdensome as to impose unreasonable and avoidable risks on police officers during their investigations.").

       3.    Search Incident to Arrest

Law enforcement officials typically must obtain a search warrant based on probable cause before conducting any type of search. However, where probable cause to effect a lawful arrest exists, police officers may perform a warrantless arrest and search incident to that

The Honorable Gerard E. Lynch
August 29, 2008
Page 6 of 6

arrest to recover both weapons and evidence. <u>United States v. Robinson</u>, 414 U.S. 218, 235 (1973) ("in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a 'reasonable' search under that Amendment"). Probable cause is assessed from the perspective of "a reasonable police officer in light of his training and experience," <u>United States v. Delossantos</u>, — F.3d —, 2008 WL 2854119 (2d Cir. 2008), and exists "when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." <u>United States v. Fisher</u>, 702 F.2d 372, 375 (2d Cir. 1983). Once probable cause exists, it does not matter whether the officers searched the defendant before or after the actual arrest. <u>United States v. Ricard</u>, 563 F.2d 45, 49 (2d Cir. 1977) ("The mere fact that the trooper reversed the procedure, conducting the search before the arrest, did not render it illegal as long as probable cause to arrest existed at the time of the search. . . . Any other holding would, without rational basis, exalt form over substance") (internal citations and quotations omitted).

## CONCLUSION

For the foregoing reasons, Morante does not have standing to challenge the seizure of the gun and the knife. With respect to Morante's post-arrest statements only, the Government consents to an evidentiary hearing to resolve the sole question of whether the police had reasonable suspicion that criminal activity was afoot when they stopped the livery cab in which Morante was riding. The Government respectfully submits that the evidence at the hearing will show that the police had reasonable suspicion to stop Morante.

Respectfully submitted,

MICHAEL J. GARCIA
United States Attorney
Southern District of New York

By:  /s/ Christian R. Everdell
Christian R. Everdell
Assistant United States Attorney
(212) 637-2556

cc:    Peggy Cross, Esq.